UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREGORY G. SCHULTZ,        )
    Petitioner,            )
                          )
   v.                   )       Case No.: 8:10-cv-1612-T-17MAP
                          )
UNITED STATES OF AMERICA,   )
    Respondent.          )
_____)

## ORDER

This cause is before the Court on Gregory Schultz's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. §2255 (Doc. CV-15) filed on November 29, 2010, and the Government's Response in Opposition to Motion to Vacate (Doc. CV-26). For the reasons set forth below, Gregory Schultz's Motion to Vacate will be **DENIED**.

## BACKGROUND AND PROCEURAL HISTORY

Gregory Schultz ("Schultz") has been a defendant in this case since December 10, 2002, when he was initially indicted, along with several other defendants, by a federal grand jury. (Doc. CR-32.) On November 16, 2004, the grand jury returned a second superseding indictment charging Schultz and several other defendants with conspiracy to commit securities fraud, wire fraud, and mail fraud, in violation of 18 U.S.C. § 371, five counts of securities fraud, in violation of 15 U.S.C. § 78j(b) and 18 U.S.C. § 2, three counts of selling unregistered securities, in violation of 15 U.S.C. §77e(a) and 18 U.S.C. § 2, thirteen counts of mail fraud, in violation of 18 U.S.C. §§2, 1341, money laundering conspiracy, in violation of 18 U.S.C. §1956(h), eight counts of engaging in illegal monetary transactions, in violation of 18 U.S.C. §§ 2, 1957, and seven counts of laundering of monetary instruments, in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(i). (Doc. CR-577.)

Although initially represented by counsel, Schultz moved to dismiss his appointed counsel and represent himself in July of 2003. (Doc. CR-159.) Following a comprehensive *Faretta* hearing conducted by the magistrate judge, (Doc. CR-173), Schultz decided to represent himself with the assistance of court appointed standby counsel. (Doc. CR-177 at 1-2; Doc. CR-179; Doc. CR-181.)

The case proceeded to trial in February of 2005 with Schultz representing himself, assisted by John Fernandez as standby counsel. (Doc. CR-1199 at 3.) On March 8, 2005, Schultz collapsed in the courtroom after suffering what he later described as a "blackout." (Doc. CR-1214 at 128; Doc. CR-1215 at 4.) Schultz was admitted to a local hospital that night after suffering numbness and additional blackouts. (Doc. CR-1215 at 3-6.) Following this incident, this Court determined that Schultz's self-representation was too much of a physical drain on him, and accordingly appointed Schultz's standby counsel to represent him. (*Id.* at 6-7, 66-69.) Schultz continued to complain of various health problems, which caused significant delays in the trial. (*See, e.g.*, Doc. CR-1217 at 16-17.) On March 16, this Court decided to sever Schultz's case and declare a mistrial so he could receive the necessary medical treatment while allowing the trial of the other defendants to move forward. (Doc. CR-1218 at 76.)

The next week, the Court learned that Schultz had been attempting to contact the other defendants without the authorization of his attorney. (Doc. CR-1220 at 6-9.) As a result, this Court issued a sua sponte order which required that Schultz follow his counsel's directions in every way and that failure to do so would be viewed as contempt of court. (Doc. CR-910 at 3-4.)

In September of 2005, on the eve of his retrial (herein after "trial"), Schultz filed a civil suit against his appointed counsel, prompting the attorney to file a motion to withdraw as counsel on the basis of conflict of interest. (Doc. CR-1191 at 1, Ex. A1 & A2.) This issue was referred to

2

the magistrate judge who conducted a hearing and determined that there was no meaningful conflict outside of the recently filed civil action. (Doc. CR-1221 at 1, 6.) The magistrate judge further determined that this recent suit was just the latest event in a pattern of obstruction and delay tactics by Schultz, and based on this behavior he had waived his right to represent himself. (*Id.* at 1, 5-6.) This order was not appealed to the District Court.

In the period between the original and the retrial, Schultz was diagnosed with multiple sclerosis. (Doc. CR-1733 at 7-8.) Before Schultz's second trial began, this Court took numerous steps to accommodate his medical needs, including placing a reclining chair, TV, and audio equipment in an adjoining room so he could participate without discomfort. (*See e.g.*, Doc. CR-1727 at 5-9.) After a two-month jury trial, Schultz was convicted of the overarching conspiracy count, four counts of securities fraud, three counts of selling unregistered securities, twelve counts of mail fraud, conspiracy to commit money laundering, eight counts of engaging in illegal monetary transactions, and seven counts of money laundering. (Doc. CR-1395.) On February 28, 2006, Schultz was sentenced, by this Court, to 262 months imprisonment, followed by 26 months supervised release, and a monetary judgment amounting to $16,797,590 (jointly and severally with the other co-defendants). (Doc. CR-1476.)

Schultz appealed to the Eleventh Circuit, challenging the magistrate judge's decision to prohibit his self-representation and this Court's denial of his motion to dismiss for prosecutorial vindictiveness. *United States v. Schultz*, 565 F.3d 1353, 1356, 1359, 1362 (11th Cir. 2009). The Eleventh Circuit held that a magistrate judge could properly rule on Schultz's request to represent himself and that Schultz was not permitted to challenge the order on its merits because he did not properly object, thus denying this Court the opportunity to review the decision. *Id.* at 1360.

3

During the pendency of this case, Schultz has engaged in constant obstructionist and delaying tactics, designed to muddle and slow the proceedings. He has sued federal prosecutors involved in the state court civil enforcement action, (Doc. CR-166 at 2), interfered with his co-defendants' attorney-client privilege, (Doc. CR-1220 at 6-9; Doc. CR-1221 at 2), petitioned the Eleventh Circuit for mandamus twice, *see, e.g., In re: Gregory G. Schultz*, Appeal No. 05-14421-B, moved to recuse the District Judge, (Doc. CR-340), lodged a complaint of judicial misconduct with the Eleventh Circuit against the magistrate judge, (Doc. CR-1221 at 2 & n.3), and attempted to manufacture a conflict of interest with his court-appointed attorney, (*id.*) All the while, Schultz has consistently asserted his right to self-representation which he constantly attempted to abuse. (Doc. CR-1661 at 13.)

On November 29, 2010, Schultz filed the instant 28 U.S.C. § 2255 motion in which he claims he was denied effective assistance of counsel based on the following twenty-one grounds: he claims (Grounds 1, 3, 19) he was barred from self-representation by Sua Sponte Order; (2, 10, 11) his attorney failed to protect his right to be free from "illegal search and seizure;" (4) his attorney failed to protect him from bias and prejudice by the Judges; (5) his attorney failed to capitalize on a successful cross-examination; (6) his attorney failed to excuse himself from the case due to "a patent conflict of interests;" (7) his appellate counsel was ineffective; (8) his attorney failed to object to the concealment of "exculpatory evidence;" (9) his attorney failed to object to using testimony given with a *Miranda* Warning; (12) his attorney failed to demand disclosure by Assistant U.S. Attorneys of their illegal search;[1] (13) Judge Kovachevich did not take action against the AUSAs after they disclosed their illegal search and seizure to her; (14) he did not agree to the stipulation that was read into the record; (15, 16, 17) his attorney failed act on

---

[1] It is not evident exactly what Schultz is alleging in Ground 12 or how it relates to his claim of ineffective assistance of counsel. The Court construes this, and all other, ambiguous grounds in such a way that it supports Schultz's claim for ineffective assistance of counsel.

4

the false statements and wrongful conduct of the AUSAs; and (18, 20, 21) his attorney failed to require that the AUSAs provide evidence that was not unlawfully obtained. (*See* Doc. CV-15 at 5-22.)

In response, the Government argues: (1) the issue of Schultz's right to represent himself has been previously decided against him and was upheld by the Eleventh Circuit, (2) there was no illegal search and seizure and no concealed exculpatory evidence, (3) there was no collapse of the Government's case based on a successful cross examination, (4) Schultz was indicted by a grand jury thus negating the possibility of prosecutorial vindictiveness, (5) Schultz's appellate counsel was adequate and effective, (6) the issue of the missing or destroyed computer tape has been previously decided, (7) Schultz's statements during the state court civil action did not trigger Miranda, (8) Schultz did not identify which stipulation he is objecting to and no objection was made at trial, (9) Schultz does not state what specific exculpatory evidence was concealed or how it would change the outcome of the trial, and (10) Schultz failed to raise many of these claims on direct appeal thus he is barred from raising them on collateral attack. (*See* Doc. CV-26 at 18-42.)

## TIMELINESS

Schultz's conviction became final when the time to seek certiorari elapsed on October 20, 2009; therefore, he had until October 20, 2010, to file this section 2255 motion. *Schultz*, 565 F.3d at 1353. *See Clay v. United States*, 537 U.S. 522, 527 (2003); *see also Kaufmann v. United States*, 28 F.3d 1336, 1338 (11th Cir. 2002). Schultz's original § 2255 motion was filed on September 21, 2010, thus it is timely filed under 28 U.S.C. § 2255 ¶ 6(1).

## COGNZABILITY

Schultz claims ineffective assistance of counsel in Grounds One through Twenty-One of his motion. (Doc. CV-15 at 5-8.) Claims for ineffective assistance of counsel are cognizable under 28 U.S.C. § 2255. *Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004).

## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate the denial of the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984). Ineffectiveness of counsel may be grounds for vacating conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance, and (2) the defendant was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687, 694. "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Thus, if the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Id. See also Coulter v. Herring*, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995).

For performance to be deficient, the defendant must establish that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence.

*See Strickland*, 466 U.S. at 690. In other words, when reviewing counsel's decisions, "the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Furthermore, "[t]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Id.* This burden of persuasion, though not insurmountable, is a heavy one. *Id.* at 1314. "'Judicial scrutiny of counsel's performance must be highly deferential,'" and courts "must avoid second-guessing counsel's performance." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689–90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168, 186 (1986)).

To the extent the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment. *See id.* at 1314-15 n.15. Thus the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act," but rather it is presumed "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Id.* Furthermore, "[t]he reasonableness of a counsel's performance is an objective inquiry." *Id.* at 1315. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take," not merely that he would have acted differently had he been in counsel's role. *See id.* To uphold a lawyer's

strategy, a court "need not attempt to divine the lawyer's mental process underlying the strategy," *id.* at 1315 n.16, and "[n]o absolute rules dictate what is reasonable performance for lawyers," *id.* at 1317.

The burden of production as to each claim in a § 2255 motion is on the movant. *Barnes v. United States*, 579 F.2d 364, 366 (5th Cir. 1978). Vague and conclusory allegations are not sufficient to sustain a claim under § 2255. *See United States v. Jones*, 614 F.2d 80, 82 (11th Cir. 1980) (holding that district court was justified in dismissing unsupported and conclusory contentions in § 2255 claim).

## DISCUSSION

## I.   GROUNDS ONE, THREE, & FOUR: BARRED BY PRIOR RESOLUTION

In Grounds One, Three, and Four, Schultz argues essentially that counsel was ineffective because he did not follow Schultz's recommendations, and that, had Schultz been permitted to represent himself, the outcome would have been different. (*See* Doc. CV-15 at 8-15.) In particular, Schultz argues that counsel was constitutionally ineffective because of counsel's "lack of knowledge and experience in the law and areas of securities." (*Id.* at 9.) The heart of the issue appears where Schultz impugns the magistrate judge's order ending his self-representation. Schultz refers to it as an absurd order, demonstrating the Court's bias by condoning this "outrageous conduct" by the magistrate judge. (*Id.* at 13-14.)

Schultz fails to appreciate that this order was issued in response to his own obstructionist conduct both while representing himself and while represented by counsel. (Doc. CR-1221.) Furthermore, Schultz has already attempted to challenge this order both by writ of mandamus and on direct appeal. In ruling on the writ of mandamus, United States Court of Appeals for the Eleventh Circuit No. 05-14420-B, the Eleventh Circuit already determined that this Court "had

the authority to terminate Schultz's right to self-representation." (Doc. CR-1271 at 4.) On direct appeal, the Eleventh Circuit held that Schultz had not preserved the right to challenge the merits of the order because he did not "give the district court an opportunity to 'effectively review' the magistrate's factual findings and legal conclusions" thus depriving the appellate court of jurisdiction. *Schultz*, 565 F.3d at 1361.

Schultz is effectively trying to relitigate claims that have been decided multiple times by redressing them as ineffective assistance of counsel. It is well settled that when claims are raised and disposed of in a previous appeal, they are procedurally barred from being raised on a subsequent appeal or collateral attack. *See Davis v. United States*, 417 U.S. 333, 342 (1974); *see also United States v. United States Smelting Ref. & Mining Co.*, 339 U.S. 186, 198 (1950); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (holding that once an issue is adversely decided on direct appeal, "it cannot be re-litigated in a collateral attack under section 2255."). The issue of the Sua Sponte Order that stripped Schultz of his right to self-representation has been litigated and appealed not once but twice, Schultz cannot bring it up again in his 2255 motion simply by redressing the issue as ineffective assistance of counsel claim.

The right to self-representation is not an absolute right. The Supreme Court acknowledged that a trial court could terminate the right if a defendant "deliberately engages in serious and obstructionist misconduct" and appoint standby counsel over the defendant's objection. *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975); *see also United States v. Dougherty*, 473 F.2d 1113, 1125 (D.C. Cir. 1972); *accord United States v. Brock*, 159 F.3d 1077, 1079 (7th Cir. 1998). The Eleventh Circuit has also recognized that the right to self-representation is not absolute and may be denied by the trial court if the defendant is likely to be disruptive to the proceedings. *Williams v. Hooks*, 2011 WL 135701, at *2 (11th Cir. 2011).

9

Given the lengthy history of obstructionist conduct and delay tactics by Schultz, outlined in the magistrate judge's September 9, 2005 order, (Doc. CR-1221), this Court was fully justified in believing that Schultz would continue to obstruct and delay the proceedings if he were allowed to represent himself or disregard his attorney.

In Ground One, Schultz directly quarrels with the Sua Sponte Order ending his right to self-representation and requiring that he follow his counsel's directions. (Doc. CV-15 at 9-11.) He essentially argues that because he is more experienced in the area of securities law and because his attorney did not follow his directions, his counsel was constitutionally deficient. (*Id.*) Leaving aside the procedural bar, Schultz offers no new evidence that his attorney was objectively deficient or that his conduct fell below the standard of a reasonable attorney. (*See id.*) Schultz simply argues that his attorney fell below Schultz's personal standard.

In Grounds Three and Four, Schultz once again challenges the validity of the Sua Sponte Order. In Ground Three, Schultz argues that he was qualified to represent himself, that there was no medical diagnosis that he was unable to continue representing himself, and that his counsel negligently failed to obtain an evidence list "and other required materials." (*Id.* at 12-13.)

Ground Four alleges bias on the part of the magistrate judge, demonstrated by the issuance of the order requiring Schultz to comply with counsel's directions. (*Id.* at 13-14.) Schultz also challenges the magistrate judge's order that prevented Schultz from filing any pleading in any Court pertaining to the subject matter of the criminal case. (*Id.* at 14.) This order was issued in response to Schultz's interceding on behalf of his co-defendants by attempting to represent them in civil court in a further effort to mire the proceedings. (Doc. CR-910.) Schultz argues that his appointed counsel was constitutionally deficient because counsel did not object to these "constitutionally reckless" orders. (Doc. CV-15 at 15.) He then notes that he filed an

unsuccessful writ of mandamus, thus the matter has already been litigated on appeal. (*Id.*)
Grounds One, Three, and Four are all procedurally barred due to prior resolution.

## II.   GROUNDS TWO, ELEVEN, AND TWELVE: EVIDENTIARY ISSUES

In Grounds Two, Eleven, and Twelve, Schultz argues that his appointed counsel failed to
object to the admission of evidence acquired in what he views as an "illegal search and seizure."[2]
(*Id.* at 12 & 19.)  Schultz argues that all of the evidence obtained by the AUSAs involved in his
case was illegally obtained and should be inadmissible. (*Id.* at 12.)  Schultz also claims that other
materials were illegally seized from the Stonehedge Group, Inc. offices by the Department of
Banking and Finance ("DBF") pursuant to a temporary injunctive order. (*Id.*)  He argues that
because there is no detailed account of the materials seized by DBF, all of the evidence used
against him could be considered ill-gotten and thus inadmissible. (*Id.*)

Contrary to Schultz's allegations, the materials seized by DBF were inventoried by Greg
Melchior, the Assistant General Counsel for DBF, pursuant to a request by Gary Lipson, the State
of Florida receiver in the state civil enforcement action. (Doc. CR-1674 at 103-04.)  Lipson then
testified that he reviewed and rechecked the preliminary inventory prepared by Melchior before
producing the "final inventory." (*Id.* at 104.)  This inventory is part of the record at
Government's Exhibit 86.  Despite Schultz's claims to the contrary, there was no federal search
warrant executed at the Stonehedge offices.

Setting aside the searches themselves, there is no evidence on record to indicate Schultz's
appointed counsel was deficient in challenging the admission of the Government's evidence.
Counsel vigorously cross-examined Melchior and Lipson, (*see, e.g.,* Doc. CR-1675 at 191-241),
and preserved Schultz's motion in limine by objecting to the admission of statements made by

---

[2] Grounds Eleven and Twelve are vague, conclusory, and frankly unclear, however, the Court will construe them in a
manner consistent with Schultz's other claims regarding the admissibility of evidence and his overarching claim for
ineffective assistance of counsel.

Schultz during his sworn subpoena enforcement hearing, (Doc. CR-1665 at 249-53.) These are just a few of the actions taken by Schultz's counsel pertaining specifically to the issue of evidence obtained through the state search of the Stonehedge offices and the agents involved in that search.

Schultz points to no specific action taken, or not taken, by counsel that would demonstrate ineffective assistances. Cross-examination is a part of trial strategy and such tactical decisions do not render assistance ineffective merely because they are unsuccessful or are later shown to be the wrong decisions. *See Adams v. Balkcom*, 688 F.2d 734, 739 (11th Cir. 1982); *see also Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir.2001)). Such decisions do not constitute ineffective assistance of counsel unless they are shown to be "so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Furthermore, effective assistance of counsel does not require errorless assistance. *Id.* at 1446. The record shows that counsel challenged this area through cross-examination and tactical objections, Schultz can point to nothing that demonstrates this conduct to be anything other than professionally reasonable, if ultimately unsuccessful.

The record is quite clear that the evidence collected by DBF pursuant to the state civil enforcement action was sufficiently inventoried and in no way illegally obtained. (*See, e.g.,* Doc. CR-1674 at 99-104.) In addition, Schultz's appointed counsel effectively performed his professional duty with regard to the admission of evidence from the state search of the Stonehedge offices. (*See, e.g.,* Doc. CR-1666 at 151; Doc. CR-1674 at 103-105; Doc. CR-1675 at 191-241.) Not withstanding Schultz's allegations, there was no federal search of the Stonehedge properties or Schultz's legal office located there. Thus, Grounds Two, Eleven, and Twelve do not state a claim for ineffective assistance of counsel.

III.    **GROUND FIVE: EXPERT WITNESS**

In Ground Five, Schultz argues that Charles Stutts, the Government's securities expert recanted his original testimony under cross-examination. (Doc. CV-15 at 15-16.) Stutts was called to testify in order to explain the various intricacies and terms involved in securities law so as to provide a background and framework for the jury. (Doc. CV-26 at 29 n.6; *see generally* Doc. CR-1665.) Schultz claims that Stutts testified that "no registration nor a certified statement . . . was applicable in any law or regulations," and that this testimony establishes Schultz's claims of actual innocence. (Doc. CV-15 at 15.) Schultz further argues that his counsel was deficient for not moving to dismiss the charges or otherwise challenging the basis of the indictment. (*Id.* at 16.)

The Government argues that "nothing in Stutts' testimony shows Schultz to be 'actual[ly] innocen[t].'" (Doc. CV-26 at 29.) Under cross-examination, Stutts clarified his earlier testimony but did not specifically reference Schultz's "investment program." (*See* Doc. CR-1665 at 44-50.) Nothing in Stutts' testimony under cross-examination "demolished" the case against Schultz, therefore there was no valid reason for counsel to move for the dismissal of charges. (*See id.*) Counsel is not rendered ineffective by declining to raise frivolous or unsupported claims or defenses or by making baseless motions. *Chandler v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001). Thus Ground Five does not state a claim for ineffective assistance of counsel.

IV.    **GROUND SIX: PROSECUTORIAL VINDICTIVENESS**

In Ground Six, Schultz argues his appointed counsel should have moved to dismiss the charges against him due to prosecutorial vindictiveness based on the fact that he was indicted following a civil lawsuit against the DBF personnel who conducted the search of the Stonehedge offices. (Doc. CV-15 at 16.) Schultz eventually named two of the federal prosecutors in his civil

suit for tortuous interference of an ongoing business. (*Id.*) Shortly thereafter, Schultz was indicted by those same prosecutors. (*Id.*)

Schultz filed previous unsuccessful motions to dismiss for prosecutorial vindictiveness. (*E.g.*, Doc. CR-160.) This Court denied Schultz's motions, noting that the investigation began before Schultz filed the suit against the prosecutors. (Doc. CR-283 at 6.) The Court also noted that "the Government brought evidence before a Grand Jury, the traditional barrier to vindictive prosecution." (Doc. CR-709 at 8.) Having already had the issue of vindictive prosecution decided against him, Schultz cannot raise it again on collateral attack. Furthermore, counsel is not ineffective for failing to raise a frivolous and non-meritorious objection. *Chandler*, 240 F.3d at 917-18. Thus Ground Six does not state a claim for ineffective assistance of counsel.

## V.    GROUND SEVEN: APPELLATE ADVOCACY

In Ground Seven, Schultz argues that his appointed appellate counsel was an ineffective advocate. (Doc. CV-15 at 17.) Among other complaints, Schultz argues that appellate counsel declined to raise certain arguments on appeal, such as issues of immunity related to the seizure of property. (*Id.*) Schultz tried to have his appellate counsel terminated so that he could represent himself on appeal. (Doc. CR-1554.) The magistrate judge granted Schultz's motion to substitute appellate counsel, (Doc. CR-1573), and this Court later denied as moot Schultz's motion to proceed pro se. (Doc. CR-1578.) At the same time, this Court reminded Schultz that the issue of self-representation had already been decided by the Eleventh Circuit, and that, as he is now represented by counsel, "the Court will only consider motions filed by counsel." (*Id.* at 2.) Any issue relating to his self-representation has been decided conclusively, and Schultz may not continue to raise it.

Setting aside the issue of self-representation, Schultz has not identified anything that would prove that his appellate counsel was ineffective. His major contention appears to be that appellate counsel did not raise every issue that Schultz wanted. (Doc. CV-15 at 17.) It is well settled that an effective appellate attorney need not raise every non-frivolous issue and that it is acceptable to "winnow out" weaker, though meritorious, arguments. *Smith v. Murray*, 477 U.S. 527, 536 (1986) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Schultz further contends that appellate counsel was ineffective because his brief lost "one simple and easy argument." (Doc. CV-15 at 17.) This argument is completely without merit; effectiveness of counsel does not rest on the ultimate outcome of litigation. Ground Seven does not state a claim for ineffective assistance of counsel.

## VI.   GROUND EIGHT: ALLEGATIONS OF MISSING COMPUTER DATA

In Ground Eight, Schultz claims that the AUSAs involved in the investigation deliberately concealed and/or destroyed exculpatory evidence that was present in the offices searched by DBF. (*Id.*) He argues that this violation was not discovered until after the trial and that this new evidence would have been discovered if counsel had "do[ne] his due diligence." (*Id.*) Alternatively, he argues that the missing evidence was beyond the scope of the temporary injunctive order which allowed the search and seizure. (*Id.*) Schultz's allegations are vague regarding the substance of the missing evidence and he offers only threadbare conclusions as to the prejudicial impact of counsel's actions. (*Id.*)

Furthermore, Schultz's argument is without merit. This Court has already determined, and the Eleventh Circuit has affirmed, that the AUSAs are entitled to qualified immunity to the extent that they may have violated Schultz's Constitutional rights in seizing and materials from his office. *Schultz v. Ashcroft*, 174 Fed. Appx. 534, 539 (11th Cir. 2006) *aff'g Schultz v. Ashcroft*,

Case No. 8:02-cv-2216-T-30EAJ (M.D. Fla.). The investigators were acting reasonably based on the scope of the temporary injunctive order; thus they were entitled to qualified immunity. *Id.* In addition, the Court notes testimony by David McGuigan, the designer of the computer system, where he indicated that destruction of the data would not occur due to someone's attempting to access the computer incorrectly as Schultz alleged happened. *Schultz v. Ashcroft*, Case No. 8:02-cv-2216 Doc. 226 at 12.

Finally, contrary to Schultz's allegations, counsel vigorously pursued this area of inquiry during trial. Counsel raised the issue of the AUSAs dealings with the computer in question and questioned them about the records collected during the investigation and the possibility of a backup tape for the computer data. (Doc. CR-1666 at 25-27, 149-51.) In light of the record, counsel performed due diligence with regard to the missing data. Thus Ground Eight does not state a claim for ineffective assistance of counsel.

## VII.   GROUND NINE: ADMISSIONS DURING STATE CIVIL PROCEEDING

In Ground Nine, Schultz claims that he "was required to provide self-incriminatory statements" to Mary Delano without being read his *Miranda* Warnings, making the admissions inadmissible. (Doc. CV-15 at 18.) He further argues that his lawyer was ineffective for allowing those admissions to be admitted at trial. (*Id.*) Schultz gave those statements as part of the investigation leading to the state civil enforcement action conducted by DBF. (*Id.*) He also alleges that the civil enforcement action amounts to double jeopardy when considered in conjunction with the federal criminal case. (*Id.*)

The right to the privilege against self incrimination applies only in the context of criminal trials. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). At the time Schultz was interrogated, he was not in custody and no criminal charges had been filed. Schultz has litigated this issue several

times in various motions to dismiss, (*e.g.*, Doc. CR-215), and this Court held that Schultz chose to appear as a corporate representative in the civil case, never asserting his Fifth Amendment rights. (Doc. CR-533 at 9; Doc. CR-283 at 8.)  In deciding other *Miranda* related issues which Schultz raised in this case, the Court held that "there was no custodial interrogation or substantial deprivation of freedom" which would trigger the *Miranda* Warnings.  (Doc. CR-533 at 10.) Furthermore, the Court notes that Schultz has repeatedly discussed his experience and qualifications as an attorney and it seems highly unlikely that he was unaware of his right against self incrimination when giving voluntary statements to state investigators.

With regard to Schultz's mention of double jeopardy, "mere overlap in proof between two prosecutions does not establish a double jeopardy violation."  *United States v Shenberg*, 89 F.3d 1461, 1480 (11th Cir. 1996) (quoting *United States v. Felix*, 503 U.S. 378, 386 (1992)).

The issue of Schultz's statements to investigators pursuant to the state civil enforcement action has been thoroughly litigated.  Schultz provides no new facts or law that would require a different conclusion in this instance.  Furthermore, he has not demonstrated how counsel was deficient for not pursing an area that had already been thoroughly and conclusively litigated. Thus Ground Nine does not state a claim for ineffective assistance of counsel.

## VIII.   GROUNDS TEN AND THIRTEEN: ALLEGED SEARCH OF SCHULTZ'S LAW OFFICE

In Ground Ten, Schultz alleges that there was a federal search of his law offices by the Federal Bureau of Investigation and the United States Postal Office and that said search occurred without a warrant or other legal basis. (Doc. CV-15 at 19.)  In Ground Thirteen, Schultz alleges that the AUSAs told the Court about their "illegal and unwarranted search" and argues that the Court had a legal duty to initiate sanctions against the parties involved as well as dismiss the

case.[3] (*Id.* at 19-20.)  Although Schultz does not state it explicitly, the implication is that counsel

should have prevented the evidence obtained by the search from being admitted or moved for

legal sanctions against the parties involved.[4]

Schultz has made repeated reference to this unwarranted search of his offices by federal

agents, but this search simply did not occur.  During the trial, Schultz entered into a stipulation in

which he "accept[ed] as established and proven in this case" that:

> ". . . documents relating to The Stonehedge Group, Inc. operations were
> discovered at 141 Stevens Avenue, Suite 7, Oldsmar, Florida 34677 shortly after
> December 31, 2002, and **were turned over to postal inspector J.B. Robinson,**
> **and FBI Special Agent Wayne Nichols Nance** in January of 2003."  (Doc. CR-
> 1667 at 283-84) (emphasis added).

Schultz has already stipulated to the manner in which documents were collected by federal

investigators.[5]  They were collected by state agents and subsequently turned over to federal

agents.  (*See* Doc. CR-1667 at 283-84.)  No federal search was conducted.

In addition, Schultz fails to specifically identify how he was prejudiced by the acquisition

of these documents or point to any evidence that would support his claim.  (*See* Doc. CV-15 at

19-20.)  Thus, Grounds Ten and Thirteen do not state a claim for ineffective assistance of counsel.

## IX.    GROUND FOURTEEN: STIPULATION AT TRIAL

In Ground Fourteen, Schultz alleges that the "agreed upon stipulation was approved and

read to the jury by the Judge" but that he never agreed to the stipulation and objected to it.  (*Id.* at

20.)  He also questions the veracity of the stipulation.  (*Id.*)  Schultz does not identify which

---

[3] Alternatively, Schultz alleges, in a conclusory fashion, a conspiracy between this Court and the Government apparently for the purpose of concealing evidence from Schultz.  He offers no specific facts and no support other than his own, unfounded inference.  The Court will not consider the conspiracy issue.

[4] The Court once again construes Schultz's allegations in a manner that supports his claim for ineffective assistance of counsel.  Although he appears to argue violation of his Fourth Amendment protection against unwarranted search and seizure, such claims are not cognizable under a section 2255 motion to vacate if the defendant had a "full and fair" opportunity to litigate the issue on direct appeal.  *See Stone v. Powell,* 428 U.S. 465, 494 (1976).

[5] This stipulation occurred during the original trial, after Schultz was represented by counsel but before he was severed.

stipulation to which he is referring, making his claim vague, conclusory, and unsupported by evidence and rendering it insufficient. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

If Schultz is referring to the previously mentioned stipulation relating to the collection of evidence by federal investigators, then there is no merit to his allegation, as his attorney specifically stated that he had no objection to the stipulation. (Doc. CR-1667 at 285.) This was a tactical decision by counsel and so is not considered ineffective merely because in hindsight it might have been the wrong decision. *See Adams*, 688 F.2d at 739. Thus Ground Fourteen does not state a claim for ineffective assistance of counsel.

## X.    GROUNDS SIXTEEN AND SEVENTEEN: CLAIMS REGARDING DAVID MCGUIGAN

Grounds Sixteen and Seventeen deal with a supposed exculpatory witness, Mr. David McGuigan. (Doc. CV-15 at 20-21.) Schultz alleges that the AUSAs involved in his case concealed Mr. McGuigan or otherwise prevented Schultz from acquiring exculpatory evidence. (*See id.*) Again, Schultz does not mention any specifics relating to what value the supposedly concealed evidence would have or how specifically it would have impacted the outcome of the case. (*See id.*)

Furthermore, there is no merit to Schultz's claim that the government concealed Mr. McGuigan or prevented Schultz from gaining access to any evidence or testimony he could provide. Schultz's appointed counsel sent a discovery request regarding Mr. McGuigan. (Doc. CV-26 at Ex. G.) There is a reference to Mr. McGuigan in the Government's trial exhibit list. (Doc. CR-1401 at 174.) Schultz took Mr. McGuigan's deposition on September 29, 2004, prior to Schultz's going to trial in October of 2005. Schultz knew, or should have known, of Mr. McGuigan and simply decided not to call him as a defense witness. Thus Grounds Sixteen and Seventeen are without merit.

**XI.   GROUNDS FIFTEEN, EIGHTEEN, TWENTY, AND TWENTY-ONE:
      EVIDENTIARY CLAIMS**

In Grounds Eighteen, Twenty, and Twenty-one, Schultz argues that counsel should have

had the case dismissed because the Government used "compelled evidence" or "failed to show an

independent source of the evidence." (Doc. CV-15 at 21-22.) Schultz's argument is threadbare

conclusions that the Government used ill-gotten evidence to convict him, but he does not identify

with any degree of specificity what evidence was wrongly obtained. (*See id.*)

Assuming Schultz is again referring to the evidence he has previously challenged in this

motion to vacate, his claim also fails on the merits. As previously stated, the "compelled

evidence" from the state civil enforcement action is not barred because that was a civil action.

Thus it does not trigger Miranda or Schultz's protection against double jeopardy. *Miranda*, 384

U.S. at 444. If Schultz is discussing the evidence obtained by the alleged "illegal search" by

federal investigators, this issue has already been settled as there was no search by federal

investigators.

In Ground Fifteen, Schultz alleges that the AUSAs involved in his case falsely claimed

that co-defendant Joseph Cuciniello was evicted from "the space." (Doc. CV-15 at 20.) Setting

aside the vague and conclusory nature of this claim, it is also without merit. The stipulation that

was previously discussed also includes mention of Mr. Cuciniello no longer occupying the space

at 141 Stevens Avenue, Suite 7, Oldsmar, Florida 34677. (Doc. CR-1667 at 283-84.) Thus

Grounds Fifteen, Eighteen, Twenty, and Twenty-one are without merit and do not state a claim

for ineffective assistance of counsel.

**XXII. GROUND NINETEEN: JUDICIAL BIAS**

In Ground Nineteen, Schultz alleges bias on the part of this Court based on the Court's (1)

deciding to terminate Schultz's right to represent himself; and (2) issuing an order directing him

to comply with his appointed counsel's directions or face contempt proceedings. (Doc. CV-15 at

21.) The issue of Schultz's right to self-representation, and this Court's decision to terminate it, is

the true heart of this motion to vacate. Nearly every ground for Schultz's ineffective assistance of

counsel claim is predicated on the belief that Schultz should have been permitted to represent

himself. (*See generally id.*)

　　This issue has been thoroughly litigated and appealed multiple times through both

mandamus and direct appeals. (*See, e.g.,* Doc. CR-1271 at 3.) In ruling on this issue, the

Eleventh Circuit held that this Court had the authority to terminate Schultz's right to self-

representation and did not err in doing so, or in appointing counsel to represent him. (*Id.* at 4.)

The Eleventh Circuit agreed with this Court that the record demonstrates Schultz's obstructionist

behavior throughout the entire proceedings. (*Id.*) Thus, Ground Nineteen is both without merit

and procedurally barred.

## EVIDENTIARY HEARING

　　A petitioner has the burden of establishing the need for an evidentiary hearing and he will

be entitled to a hearing only if his allegations, if proven true, would establish his right to collateral

relief. *See Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (en banc). A district court

may order the summary dismissal of a section 2255 motion "[i]f it plainly appears from the face

of the motion and any annexed exhibits and the prior proceedings in the case that the movant is

not entitled to relief[.]" *Broadwater v. United States*, 292 F.3d 1302, 130 (11th Cir. 2002). No

hearing is required when the record establishes that a section 2255 motion lacks merit. *See*

*United States v. Logrone*, 727 F.2d 1037, 1038 (11th Cir. 1984). As previously discussed,

Schultz's claims are either procedurally barred or lacking in merit, thus he is not entitled to an

evidentiary hearing.

Accordingly it is:

ORDERED that Gregory Schultz's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. §2255 (Doc. CV-15) is DENIED. The Clerk is directed to enter judgment against Schultz and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Gregory Schultz is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong, *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Schultz has not made the requisite showing in these circumstances.

Finally, because Schultz is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, this 14th day of July, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: all parties and counsel of record

22